INMAN, Judge.
Defendant seeks appellate review by petition for writ of certiorari of judgments entered pursuant to a guilty plea, contending that the trial court erred in imposing restitution without sufficient evidence and entering a judgment inconsistent with the plea agreement. After careful review, we issue the requested writ, vacate Defendant's sentence, and remand the matter to the trial court for a new trial.
I. Factual and Procedural History
The record tends to show the following:
At roughly 1:00 AM on 14 August 2012, the Pamlico County Fire Marshal received a call concerning a burning structure in Grantsboro, North Carolina. A local sheriff's deputy arrived first at the scene of the fire, where he was greeted by Defendant and another gentleman, Michael Block ("Mr. Block"). Defendant told the sheriff's deputy that he was "just burning an old chicken coop down." The fire marshal arrived some time later, at which point both the chicken coop and an adjacent shed were ablaze. When questioned individually by the fire marshal, Mr. Block stated that Defendant had started the fire, and that Mr. Block was tasked with ensuring the fire did not get out of control in lieu of paying rent. Defendant was arrested on a charge of felony burning other buildings as a result of the fire, and was released the same day. He was indicted by grand jury on 16 April 2013.
Seventeen months after the chicken coop conflagration, Defendant broke into his grandfather's home and stole a semi-automatic rifle, a bolt action rifle, and a shotgun. An arrest warrant was issued on three counts of felony larceny, and sheriff's deputies confronted Defendant at his home on 10 January 2014. Defendant admitted to stealing the weapons and was taken into custody at that time. Upon arriving at the jail, however, Defendant attempted to escape from custody by running from the sally port while still in handcuffs. Defendant was immediately apprehended and held under bond.
His fettered flight fouled, Defendant hatched a new plan to secure his release from prison and the following day called a local bondsman, Reginal Beasley ("Mr. Beasley"). Defendant told Mr. Beasley that he had $12,000 in cash and gold hidden in a safe, and promised Mr. Beasley its contents if he would bail Defendant out of jail. Mr. Beasley agreed to the arrangement and posted bond, securing Defendant's release.
Free to make good on his promise to Mr. Beasley, Defendant took the bondsman to his girlfriend's house to pick up the key to the safe. The two then travelled to Defendant's grandfather's house, where Defendant informed Mr. Beasley that the safe was stored in a shed on the property. Now past nightfall, the two began to search the shed by the light of Mr. Beasley's cellphone. They were unsuccessful in locating the safe, however, and Defendant suggested Mr. Beasley expand the search outside by a nearby lean-to. As Mr. Beasley bent over to search the lean-to, Defendant attacked the bondsman from behind with a machete, striking him multiple times in the back of the head and on one hand. Mr. Beasley fought back, and Defendant reached for Mr. Beasley's sidearm. In the course of the scuffle, Mr. Beasley released the clip from the gun so that he would not be shot with his own weapon, and Defendant ran into his grandfather's house to secure another gun, screaming that Mr. Beasley was attempting to kill him. Defendant grabbed one of his grandfather's rifles, but, instead of pursuing Mr. Beasley, threatened to kill himself. Defendant's grandfather intervened and disarmed him; however, Defendant was nonetheless able to grab a knife and stab himself in the neck. In the interim, Mr. Beasley escaped to his car, drove to a nearby home, and was taken to the hospital. Defendant was also taken to the same hospital that evening. He was indicted for felony larceny, felony breaking and entering, and the attempted murder of Mr. Beasley on 28 January 2014.
Between the burning of the chicken coop and the events culminating in the assault on Mr. Beasley, Defendant had another encounter with local emergency services. In late December 2013, Pamlico County Rescue was called to Defendant's residence about an infant who had stopped breathing. The infant, Defendant's eight-month old child, was transported to a hospital in New Bern but could not be resuscitated. An autopsy was performed, and it was determined that the infant had died from an overdose of Benadryl. Following the autopsy (and after Defendant had been placed in custody for his assault on Mr. Beasley), the sheriff's department opened an investigation and interviewed Defendant about the child's death. Defendant admitted in the interrogation that he had given the infant an entire dropper full of Benadryl and also had mixed the Benadryl "really strong" into the infant's bottle. Defendant stated that he gave the maximum dosage allowed, apparently unaware that the Benadryl he used was formulated for children six years or older. Defendant was indicted for first degree murder on 27 January 2015.
Defendant pleaded guilty to attempted first degree murder, felony burning other buildings, felony breaking and entering, felony larceny, and voluntary manslaughter in open court on 23 January 2017. In exchange, the State dismissed other pending charges for possession of stolen firearm, assault with deadly weapon with intent to kill inflicting serious injury, kidnapping, obtaining property by false pretenses, assault inflicting serious bodily injury, negligent child abuse, escape, failure to reduce speed, and four counts of driving while license revoked. The State and Defendant also agreed that he would receive pretrial confinement credit, and the trial court and counsel for the parties engaged in the following discussion concerning the amount of said credit during the court's recitation of the plea:
THE COURT: ... Pursuant to [ N.C. Gen. Stat. § 15-196.1 ] et sequitur the minimum and maximum term of the sentence shall be diminished by the total amount the defendant spent in pre-trial confinement. [The plea transcript] has blank days in pretrial confinement.
[DEFENSE COUNSEL]: Your Honor, if you'll write in 1,402 days is [sic] what the prosecutor and I have agreed to.
[THE STATE]: That's correct, Judge.
THE COURT: That you have 1402 days pre-trial confinement credit.
Is the plea arrangement set forth within this transcript as I've just described it to you correct as being your full plea agreement?
[DEFENDANT:] Yes, sir.
[THE COURT:] Do you now personally accept this agreement?
[DEFENDANT:] Yes, sir.
The plea transcript contained in the record, consisted with the above, states that "[p]ursuant to [N.C. Gen. Stat. §] 15[-]196.1 et. seq. the minimum and maximum term of the sentence shall be diminished by the total amount the Defendant has spent in pretrial confinement. The Defendant has 1402 days in Pretrial Confinement Credit."
Following a presentation of evidence as to mitigation by the defense and a colloquy by the Defendant, the trial court sentenced Defendant to a minimum of 180 and maximum of 228 months imprisonment for attempted first degree murder, with credit for pretrial confinement; sentenced Defendant to a minimum of 50 and maximum of 72 months imprisonment for manslaughter to run consecutively with the sentence imposed for attempted murder; and consolidated the charges for burning other building, felony breaking and entering, and felony larceny and sentenced Defendant to a minimum of eight and maximum of nineteen months imprisonment to run concurrent with the sentence imposed for manslaughter. In addition to the prison sentences, the trial court ordered restitution be paid to Mr. Beasley in the amount of $30,050. The State introduced no evidence to support restitution in this amount, and instead offered a statement from the prosecutor that Mr. Beasley "was out the amount of bond he posted, which was ... $30,050.... He paid that amount. He was going to get paid and never got paid."
The trial court entered its written judgments on 23 January 2017. However, the judgment for attempted first degree murder stated that "[D]efendant shall be given credit for 1105 days spent in confinement prior to the date of this Judgment" rather than the 1,402 days agreed upon in the plea transcript and oral recitation thereof.
Defendant filed a handwritten notice of appeal on 9 February 2017, three days after the time allowed under Rule 4(a)(2) of the North Carolina Rules of Civil Procedure, on the grounds that the judgments did not comport with the plea agreement. Appellate counsel for Defendant thereafter filed a petition for writ of certiorari on 29 August 2017. The State moved to dismiss Defendant's appeal on the grounds that Defendant filed an untimely notice of appeal and that no appeal as of right on the grounds presented exists under N.C. Gen. Stat. § 15A-1444(e). Defendant filed an amended petition for writ of certiorari in an attempt to cure the untimely notice of appeal.
II. Analysis
Defendant argues that the trial court erred in: (1) entering a judgment inconsistent with the plea agreement and transcript; and (2) ordering restitution without sufficient evidence. In its briefing to this Court, the State concedes that "[t]he prosecutor's unsworn statements were not sufficient to support the specific amount of restitution imposed" under State v. Wilson , 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995), and State v. Buchanan , 108 N.C. App. 338, 341-42, 423 S.E.2d 819, 821 (1992). Because the State concedes error and we find Defendant's arguments meritorious, in our discretion and to prevent manifest injustice we invoke Rule 2 of the North Carolina Rules of Appellate Procedure and review Defendant's appeal by writ of certiorari.[1]
In his initial brief to this Court, Defendant argues that the trial court's judgment crediting him with 1,105 days in pretrial confinement as opposed to the 1,402 days stated in the plea was a clerical error. The State, relying in part on the conditions of release and release orders showing the dates on which Defendant was in custody, contends that the 1,402 days offered and agreed to in the plea was actually a miscalculation,[2] and that the judgment accurately reflects the amount of pretrial confinement credit Defendant is entitled to under N.C. Gen. Stat. § 15-196.1 (2015). It appears from the conditions of release and release orders that Defendant is only entitled to 1,105 days pretrial confinement credit under N.C. Gen. Stat. § 15-196.1, a result inconsistent with the plea transcript.
Whether a miscalculation or a clerical error, Defendant requests that we remand the judgment to provide him with 1,402 days pretrial credit consistent with the plea transcript, citing State v. Wall , 348 N.C. 671, 676, 502 S.E.2d 585, 588 (1998). In Wall , the North Carolina Supreme Court recognized that a defendant who pleads guilty is "entitled to receive the benefit of his bargain[.]" Id. at 676, 502 S.E.2d at 588. It also recognized, however, that a "defendant is not entitled to specific performance [where] such action would violate the laws of this state." Id. at 676, 502 S.E.2d at 588. Because N.C. Gen. Stat. § 15-196.1 does not permit crediting Defendant with 1,402 days of pretrial confinement, we are unable to remand with instructions to enter a judgment that would violate the statute. Wall , 348 N.C. at 676, 502 S.E.2d at 588. Nor can we adopt the State's position and affirm the judgment, as the trial court must give a defendant an opportunity to withdraw his guilty plea where the sentence imposed differs from the plea agreement pursuant to N.C. Gen. Stat. § 15A-1024 (2015). See, e.g., State v. Puckett , 299 N.C. 727, 730-31, 264 S.E.2d 96, 98-99 (1980) (holding that where the trial court entered a sentence inconsistent with a plea agreement, it "should have followed the provisions of [N.C. Gen. Stat. §] 15A-1024"). Instead, we vacate the judgment and remand for a new trial so that Defendant "may withdraw his guilty plea and proceed to trial on the criminal charges ... [or] attempt to negotiate another plea agreement that does not violate [state law]." Wall , 348 N.C. at 676, 502 S.E.2d at 588.[3]
III. Conclusion
For the reasons set forth above, we vacate the plea and the judgments and dismissals entered pursuant thereto and remand for a new trial. Defendant and the State may proceed to trial or attempt to renegotiate a plea deal consistent with state law.
VACATED AND REMANDED FOR NEW TRIAL.
Report per Rule 30(e).
Judges HUNTER and BERGER concur.

We dismiss as moot the State's motion to dismiss Defendant's appeal.

In addition to its motion to dismiss, the State has also moved to amend the record under Rules 2 and 37 to include email correspondence from and an unfiled motion drafted by Defendant's trial counsel acknowledging the miscalculation and seeking to amend the plea transcript. Because we are able to resolve the appeal without reference to these documents, we deny the State's motion to amend the record.

In practice, negotiated plea arrangements need not include specific calculations for time served awaiting trial. Pursuant to N.C. Gen. Stat. § 15-196.1, every defendant is entitled to a credit against an active sentence for time spent in custody awaiting trial. It would be prudent for trial courts to ensure that stipulations regarding specific credit for time served are in fact accurate before accepting pleas.